**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules**

**July 2, 2026**

# In the Court of Appeals of Georgia

A26A0355. MCDAVID v. THE STATE.

GOBEIL, Judge.

A Fulton County judge found John McDavid guilty of DUI per se, DUI less safe, and failure to maintain lane/improper lane change after he was arrested following a single car accident on July 21, 2023. He now appeals directly from his judgment of conviction, arguing that the trial court erred in (1) denying his motion to suppress the evidence obtained from his traffic stop and detention; and (2) denying his motion in limine to suppress the results of the State administered Intoxilyzer test. McDavid also contends, and the State concedes, that his sentence on the final disposition was improper due to a scrivener's error. For the reasons explained below, we reverse the denial of McDavid's motion to suppress and reverse his convictions.

The primary issues in this case require us to review the trial court's denial of McDavid's motion to suppress evidence. "Following the grant or denial of a motion to suppress, we construe the evidence in the light most favorable to uphold the findings and judgment of the trial court." *Grimes v. State*, 303 Ga. App. 808, 808(1) (695 SE2d 294) (2010). "[T]he trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." *Green v. State*, 331 Ga. App. 801, 801 (771 SE2d 518) (2015). "[W]here controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo." *Ellis v. State*, 312 Ga. 243, 247(1) (862 SE2d 279) (2021).

The record here shows that McDavid was charged with DUI per se, DUI less safe, and failure to maintain lane/improper lane change based on an incident that took place on July 21, 2023. McDavid filed a motion to suppress alleging that he was unlawfully "stopped and detained by officers of the Alpharetta Police Department." Specifically, he alleged that the "original two officers on scene refused to allow [McDavid] to leave on foot or call a ride. [McDavid] was told he was required to remain on scene, and he must get back in his vehicle." In a separate motion, he also

sought to suppress the results of a blood alcohol breath test because, among other things, the machine with which it was performed, the Intoxilyzer 9000, was not "in good working order," with all parts attached, as required under state law. These issues were among many raised within several motions filed by McDavid.

The trial court conducted a hearing on McDavid's motions on February 4, 2025. The State asked McDavid "to announce which portions of his motions he's going forward with," and McDavid included, as relevant here, articulable suspicion for the stop and detention, probable cause for the arrest, expeditious and diligent investigation by the officers, and the working order of the alcohol breath test machine.

On the stop and detention issue, the only witness called by the State was Sergeant Dustin Bak, an Alpharetta police officer. On the night of July 21, 2023, he was assigned to the DUI enforcement unit, and he responded to a crash at approximately 11:30 p.m. He was not the first officer on the scene; two other officers were already present. Bak testified that one of the officers was "talking to [the driver] and [Bak] walked up and ... basically took over ... the investigation" because of his position on the DUI taskforce.

Bak observed the vehicle, which had struck a median and was "stuck in" place. There was damage to the car, and it later had to be removed from the median by a tow truck because it was not drivable. The driver, McDavid, was sitting alone in the vehicle with the door closed and the window "about half way down." Bak testified that, upon interacting with the driver, he immediately smelled alcohol and suspected intoxication. The driver was confused, had slurred speech, and struggled to explain what had happened. When asked to produce his driver's license, McDavid was slow to retrieve it and tried to hand Bak the entire wallet. When McDavid exited the vehicle, he fell forward and Bak had to catch him. McDavid admitted to having "a couple of drinks" at a restaurant in the hours before.

Bak conducted road side evaluations of McDavid's intoxication and determined that he was unsafe to drive. Bak then administered his road side breath test, which confirmed the presence of alcohol. Bak placed McDavid under arrest, and took him to the jail, where he administered another breath test on the Intoxilyzer 9000 machine. The results of this test showed McDavid's blood alcohol level to be well above the

legal limit for operating a vehicle. The video footage from Bak's body camera was admitted into evidence and shown to the trial court.[1]

Regarding the condition of the Intoxilyzer machine, McDavid alleged that there was a GBI bulletin stating "that the machine was not working properly and . . . was not in good working order."[2] McDavid entered this bulletin into the record, but noted

---

[1] The video generally confirms Bak's description of events. Notably, the video shows two officers standing at McDavid's driver's side door, one of whom was speaking to McDavid as Bak approached the vehicle. As Bak gets closer, the officer speaking to McDavid introduces Bak and states that Bak will be the person talking to him, and Bak engages directly with McDavid from that point on.

[2] Specifically, this bulletin, dated August 23, 2023, states:

It has been discovered that breath test reports reprinted from Georgia Model Intoxilyzer 9000 instruments in some instances may contain a single breath sample profile that is inconsistent with the breath profiles contained on the original breath test report. This inconsistency can occur if the instrument attempts to duplicate an existing file name during the storage of the breath profile image; however, all other information on reprinted reports, including the measured BrAC result, has been found to be consistent with the original breath test. Additionally, all elements of original breath test reports printed at the time of testing accurately reflect the breath test information.

Considering this, we recommend that any reprinted breath test report

that, as exculpatory evidence, it was the State's responsibility to provide it in discovery, but it had not done so. McDavid expressed frustration that the State was surprised at this issue being raised because it should have been on notice given the GBI bulletin and his motions. The trial court indicated that it would hold another hearing on the issue so that the State could schedule any further witnesses it may require. However, the trial court ruled on this issue after hearing from the only State witness, Sergeant Bak.

Bak testified that he was trained in operating the Intoxilyzer 9000 and had used the machine approximately 15 times in the past. Bak testified that the machine was functioning properly and in good working order with all its component pieces on the night of McDavid's arrest. He explained that the machine is inspected and calibrated by the Georgia State Patrol quarterly, and the machine's certifications were entered into evidence. When asked about the GBI bulletin described above, Bak stated that the

---

bearing software version 9406.05.00 be verified against an original printing prior to use. An original test can be identified by ensuring that the date and time in the "Printed On" field at the bottom of the report is consistent with the date listed in the top right corner of the report and the time given for the last "Air Blank". Note that these times may vary by as much as a few minutes.

software issue described in the bulletin (which came out after McDavid's tests were conducted) did not produce the error described in the bulletin during McDavid's tests.

The court issued its order denying McDavid's motions. The court found that there "was no traffic stop of a moving vehicle," rather, this "was a single car accident investigation," and Sergeant Bak had reasonable suspicion to conduct a DUI investigation after he observed signs of intoxication from McDavid. The court noted that the "initial encounter was a first tier encounter and thus required no suspicion of criminal activity," and "although there was no direct testimony regarding how long the other officers had been on scene, there appeared to have been no investigation done by the time Sgt. Bok (sic) arrived. He responded directly to an accident call at approximately 11:30 p.m." The court noted that the vehicle was not drivable, and McDavid was still seated in his vehicle and had not yet removed his driver's license to give to any other officer. The court then found that the investigation was not unreasonably prolonged, and Bak had probable cause for the arrest.

As for the Intoxilyzer results, the court found that "the State did not have a witness present to testify regarding this issue because the defense had not

particularized its motion to advise the State of the nature of the challenge to the breath test." Relying on the exhibits presented at the hearing and Bak's testimony, the court found that further witnesses were not necessary because the "bulletin does not apply to the test results in this case; the evidence presented was a verified copy of the original test result, not a machine originated reprint and the test result showed two breath profiles."

The case then proceeded to a stipulated bench trial, where the parties agreed for the court to make its verdict based on the evidence presented at the motion to suppress hearing. The court found McDavid guilty as charged. The court indicated that the DUI per se charge would merge into the DUI less safe charge, so he was to be sentenced on Counts 2 and 3. The court sentenced him to 12 months, with one day to serve in custody. On McDavid's final disposition sheet, however, there is a scrivener's error which indicates that he was sentenced for Counts 1 and 2, rather than Counts 2 and 3. This appeal followed.

1. On appeal, McDavid argues that the State failed to carry its burden to show the lawfulness of his initial stop and detention. By failing to have either of the first two responding officers testify at the motion to suppress hearing, McDavid contends that

the State "did not establish the reason for the initial police-citizen encounter." Further, McDavid argues that the State "failed to prove how long the initial officers were at the scene detaining [McDavid] pending Bak's arrival or what they did while waiting for Bak," noting that Bak never provided any specific information about what time he was dispatched and what time he arrived on scene. McDavid contests the trial court's finding that the initial encounter with McDavid and the original two officers was a first-tier encounter requiring no reasonable suspicion because "the court cites to no testimony to support" this finding. We agree that the State failed to carry its burden in this case.

"The Fourth Amendment imposes limits on search-and-seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *Brown v. State*, 293 Ga. 787, 791(2)(a) (750 SE2d 148) (2013). It is well established that there are three types of encounters between law enforcement and citizens for purposes of a Fourth Amendment analysis: "encounters involving no coercion or detention, which are outside the purview of the Fourth Amendment altogether; brief seizures, which require an officer to have a reasonable suspicion of criminal wrongdoing; and custodial

9

arrests, which require probable cause." *State v. Perry*, 349 Ga. App. 475, 476 (825 SE2d 902) (2019).

A first-tier encounter is a consensual interaction, during which "police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave." *Minor v. State*, 314 Ga. App. 253, 255(1) (723 SE2d 702) (2012). If the trial court in this case were correct, and the encounter between McDavid and the original two responding officers was a first-tier encounter, the fact that the original officers did not testify would be immaterial, because a first-tier encounter requires no specific justification and "provides no Fourth Amendment protection." *McClary v. State*, 292 Ga. App. 184, 186 (663 SE2d 809) (2008).

However, we have held repeatedly "that a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter." *Johnson v. State*, 343 Ga. App. 310, 312 (807 SE2d 101) (2017). See also *State v. Walker*, 350 Ga. App. 168, 174–75 (828 SE2d 402) (2019) (encounter escalates to second-tier when "by means of physical force or a show of authority, a reasonable person would have

believed that he was not free to leave" (punctuation omitted)). And McDavid alleged in his motion to suppress specifically that the "initial officer to stop and detain [him] did not have a reasonable articulable suspicion to stop nor continue to detain [him]," and the "original two officers on scene refused to allow [him] to leave," told him to remain on scene, and told him to stay in his vehicle.[3] There is no question that, if McDavid's allegations are true, and either of the responding officers ordered McDavid to remain in the vehicle, or instructed him that he could not leave the scene, then McDavid was being detained for purposes of the Fourth Amendment.[4] See *In the*

---

[3] Although we have no testimony from the motion to suppress hearing concerning what the original officers said to McDavid, Sergeant Bak testified, and his body cam video shows, that at least one of these officers was speaking to McDavid at his driver's window before Bak arrived.

[4] We take this opportunity to distinguish *Stadnisky v. State*, 285 Ga. App. 33, 36–38(2) (645 SE2d 545) (2007), in which we affirmed the DUI conviction of a defendant. In *Stadnisky*, a witness testified at the defendant's bench trial that the defendant swerved in front of her vehicle and crashed into her. 285 Ga. App. at 34(1). The two cars pulled over to a nearby gas station; the defendant's car was undrivable due to damage sustained after hitting a curb while trying to park the vehicle there. Id. The witness testified that she spoke to the defendant, who was "agitated and slurred his words a little," and refused to turn over his insurance information. Id. She called police, and an unidentified officer responded to the scene within 5 minutes and told them to wait for another officer, essentially detaining them until the second officer arrived approximately 20 minutes later and ultimately arrested the defendant based on signs of intoxication to which the second officer testified. Id. When the "phantom" first officer was never identified by the State, the defendant moved in limine to

11

suppress all testimony from the second officer, as any evidence he gathered came as a result of the unsupported detention from the first officer who did not testify. Id. at 36(2).

We ultimately affirmed the trial court's denial of this motion limine for three reasons, none of which are compelling in McDavid's case. First, the only evidence of this "phantom officer" was the witness's testimony, which the trial court was authorized to discredit. Id. at 37(2). Second, "there were abundant objective circumstances that would have been obvious to the 'phantom' first officer that would have authorized a seizure." Id. Third, regardless of whether the defendant was "seized" within the meaning of the Fourth Amendment, he had an independent duty to remain on the scene pursuant to OCGA § 40-6-270(a), the hit and run statute. Id. at 38(2). Thus, he was not free to leave under the law for a reason independent of the phantom officer's demands. Id. Based on these reasons, the trial court's admission of the subsequent officer's evidence was affirmed. Id.

Here, however, on the first issue, there was no witness testimony concerning what the original responding officers said to McDavid, so the trial court was not authorized to simply disbelieve the allegations in McDavid's motion to suppress, as it is the State's burden to produce evidence supporting the detention. See *State v. King*, 287 Ga. App. 680, 682 (652 SE2d 574) (2007) ("Once a defendant files a motion to suppress alleging an illegal search and seizure, the state bears the burden of proving that the search is lawful.").

On the second issue, we find distinguishable the amount of evidence presented to the trial court to support the finding of "abundant objective circumstances" to justify the original officers' detention of McDavid, as the only evidence here came from Officer Bak, who was not present during the crucial moment of the original detention. In *Stadnisky*, where the State presented a witness to testify to the circumstances of the defendant's two incidents of reckless driving, the defendant's demeanor (including signs of intoxication) immediately following the car accident, the presence of the non-testifying officer and his interaction with the defendant, and the timeline of events. Here, in contrast, we have only Bak's testimony and body cam footage, and he was unable to testify as to the amount of time that passed between when the accident occurred, when the original officers arrived and detained McDavid, and when Bak arrived on the scene. Accordingly, unlike in *Stadnisky*, although here

*Interest of C. B.*, 353 Ga. App. 383, 384 (837 SE2d 544) (2020) (officer telling defendant to stay in front of his police car while awaiting another officer escalated a first-tier encounter to a second-tier encounter).

On a motion to suppress, the State bears the burden to prove the lawfulness of the detention. OCGA § 17-5-30(b). And in order to justify a second-tier encounter, even a brief one, the State is "required to prove that the officer then was aware of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention." *State v. Assing*, 361 Ga. App. 868, 869 (864 SE2d 131) (2021). Indeed, "the moment [McDavid] was prevented from leaving [the officers'] presence, his encounter with the police amounted to a detention which, in

---

we have evidence of certain objective circumstances as they existed at the time Bak observed McDavid, we are forced to only assume the presence of these circumstances at the time McDavid was detained. Given these facts and without any indication of the timeline between these points in time, we find it to be too speculative to support a reasonable inference here as our Court did in *Stadnisky*.

Finally, McDavid's accident did not involve another vehicle or injured person, which would have required him to remain on scene. OCGA § 40-6-270. Indeed, "where is no personal injury or in which no second party and no property of a second party is involved," a motorist does not have to immediately stop and report an accident. OCGA § 40-6-274. Accordingly, we find *Stadnisky* distinguishable from the instant case.

order to be lawful, must be supported by reasonable suspicion." *State v. Mrozowski*, 371 Ga. App. 501, 504 (901 SE2d 327) (2024).

Here, the State simply failed to meet its burden to disprove the allegations in McDavid's motion. Given the allegations, the State needed the testimony of at least one of the initially responding officers to either rebut McDavid's allegation that they prevented him from leaving the scene (making it a first-tier encounter with no further justification necessary), or provide the court with testimony from which the court could determine if the officer had reasonable suspicion for the detention. See *Assing*, 361 Ga. App. at 869 ("Absent testimony regarding the specific and particularized facts justifying the officer's detention of [the defendant], the State could not meet its burden of proving that [the defendant's] detention was lawful."). It is true that Sergeant Bak, who later responded to the scene, provided significant testimony for the basis of his investigation and arrest of McDavid and that such reasonable suspicion may have existed at the time of the initial detention. However, his testimony of later occurring events does not help the State meet its burden of proving that the initial detention was sufficiently justified. Compare *Kazeem v. State*, 241 Ga. App. 175, 177–78 (525 SE2d 437) (1999) (reversing the denial of a motion to suppress where the

first officers on scene did not testify; first officers had already restricted the defendant's movement and began to question him; "because it is unclear what facts the officers who initiated the stop had before they made the stop, the evidence should have been suppressed"), with *Adcock v. State*, 299 Ga. App. 1, 2 (681 SE2d 691) (2009) (affirming the denial of motion to suppress where the first officers on scene did not testify; although the testifying officer was not the first on scene, "it is undisputed that he was the first officer to approach [the defendant] and his car and the first to interact with [the defendant] in any way"). Accordingly, the trial court erred in denying McDavid's motion to suppress. And given that the only evidence presented by the State in this case came after his unjustified detention, his convictions must be reversed. See *State v. Alford*, 347 Ga. App. 208, 214(3) (818 SE2d 668) (2018) (absent an applicable exception, where there is no legal justification for an arrest, its unlawful fruits may not be introduced as evidence).

2. Because of our holding in Division 1, we need not address McDavid's arguments concerning the admissibility of the results of the Intoxilyzer test or the error on his final disposition sheet.

*Judgment reversed. Dillard, P. J., concurs in judgment only and Pipkin, J., dissents.*

A26A0355. McDAVID v. THE STATE.

PIPKIN, Judge, dissenting.

Just like the law does not require a fact-finder to get wet to conclude that it has been raining, the trial court, in this case, was not required to hear from multiple witnesses to conclude that McDavid was obviously drunk when he first encountered law enforcement after driving his SUV off the road late on a Friday night in July 2023. Unfortunately, in analyzing the trial court's ruling denying McDavid's motion to suppress, the majority opinion has applied an incomplete standard of review and strayed from construing the evidence most favorably to upholding the trial court's factual findings and judgment. As a result, I cannot join the majority opinion and must respectfully dissent.

The majority opinion assumes that this case involves a traffic stop, but it does not. Instead, the 64-year-old defendant immobilized his SUV by driving it off the road and onto a recently landscaped median, taking out a road sign and a small tree in the process. The State presented uncontradicted evidence at the suppression hearing that the original two officers on the scene, Lieutenant Heart and Officer Rupert of the Alpharetta Police Department, were there to conduct an accident investigation. Sgt. Dustin Bak, who was assigned to the department's DUI enforcement unit, also was dispatched to the scene as part of the accident investigation, and he later filed an accident report. However, once Bak arrived and began speaking with McDavid, the accident investigation evolved into a DUI investigation, and Bak ultimately arrested McDavid for DUI.

The primary issue in this case is whether Heart and Rupert violated McDavid's Fourth Amendment rights by allegedly ordering him to remain there until Bak arrived. On appeal from an order denying a motion to suppress, we must uphold the trial court's factual findings if there is *any evidence* to support them. See *Winslow v. State*, 315 Ga. 133, 136-37(2) (880 SE2d 530) (2022); *Brown v. State*, 293 Ga. 787, 803(3)(b)(2) (750 SE2d 148) (2013). In addition, we must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment.

2

See *Winslow*, 315 Ga. at 137(2); *State v. Allen*, 298 Ga. 1, 2(1)(a) (779 SE2d 248) (2015). Critically, determining whether the "historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause ... is a mixed question of law and fact" that this Court reviews de novo. *Ornelas v. United States*, 517 U.S. 690, 696 (116 SCt 1657, 134 LE2d 911) (1996). See also id. at 699 ("[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."); *Hughes v. State*, 296 Ga. 744, 750 (2) (770 SE2d 636) (2015) ("[W]e owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts."). Likewise, determining whether a detention was unreasonably prolonged may be a fact-intensive inquiry, "but it is ultimately a holding of constitutional law that we review de novo." *Allen*, 298 Ga. at 4(2).

Prior to trial, McDavid filed a motion to suppress pursuant to OCGA § 17-5-30(a)(1). In his motion, McDavid asserted as fact that "[t]he original two officers on scene" told him six things: (1) he was "going to be arrested"; (2) he had to "wait for other officers"; (3) he could not "leave on foot"; (4) he could not "call a ride"; (5) he had to "remain on scene"; and (6) he had to "get back in his vehicle." Assuming

3

these facts are true,[1] before Bak arrived at the scene, Heart and Rupert had a conversation with McDavid and saw him outside his SUV. See Maj. Op. at 5 n.1 (noting that the footage from Bak's body camera, which was admitted into evidence and played for the trial court at the suppression hearing, shows that "at least one of these officers [i.e., Heart or Rupert] was speaking to McDavid at his driver's window before Bak arrived"). And we know from Bak's testimony at the suppression hearing and the footage from his bodycam what "objective facts, ... obvious to anyone at the scene," Heart and Rupert would have learned merely from conversing with McDavid and observing him outside his SUV. *Stadnisky v. State*, 285 Ga. App. 33, 37(2) (645 SE2d 545) (2007).

Bak testified that when he approached McDavid's SUV, he could smell "[t]he immediate odor of alcohol[ic] beverage coming from [McDavid's] breath when he spoke ... ." Bak also testified, and his bodycam footage shows, that McDavid was heavily slurring his speech and could not explain "how he ended up in the median." Bak testified that McDavid was "very unsteady on his feet," and his bodycam footage

---

[1] As the majority opinion acknowledges, McDavid presented no evidence at the suppression hearing that Heart or Rupert said any of these things to him. See Maj. Op. at 11 n.3.

shows that McDavid swayed when standing and had trouble remaining upright. Indeed, the bodycam footage shows that McDavid was falling-down drunk; when he got out of his SUV, he staggered for a few steps and then fell into Bak, who had to catch him to keep him from falling to the ground. Thus, contrary to the majority opinion's claim, see Maj. Op. at 13 n.4, at the suppression hearing, the State presented evidence of "abundant objective circumstances that would have been obvious to [Heart and Rupert] that would have authorized a seizure" of McDavid. *Stadnisky*, 285 Ga. App. at 37(2). See also id. (referring to "objective facts, ... obvious to anyone at the scene, [that] would have given rise to a reasonable suspicion of criminal activity").

When properly viewed, Bak's testimony at the suppression hearing, together with the footage from his bodycam, showed clearly that Heart and Rupert did not violate McDavid's Fourth Amendment rights. The validity of McDavid's alleged detention prior to Bak's arrival did not turn on the subjective beliefs or motivations of Heart or Rupert. See id. See also *Whren v. United States*, 517 U.S. 806, 814(II)(B) (116 SCt 1769, 135 LE2d 89) (1996) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."). Cf. Maj. Op. at 9 (recounting McDavid's argument that "[b]y failing to have either of the first two responding officers testify at the motion to

5

suppress hearing, ... the State 'did not establish the reason for the initial police-citizen encounter'"). Consequently, there was no need for testimony from Heart or Rupert at the suppression hearing.

The majority opinion concedes that Bak's testimony and bodycam footage constituted "evidence of certain objective circumstances as they existed at the time Bak observed McDavid" and that this evidence established that "reasonable suspicion *may have* existed at the time of [McDavid's] initial detention." Maj. Op. at 13 n.4, 15 (emphasis added). However, the majority opinion then dismisses this evidence on the theory that "testimony [about] later occurring events does not help the State meet its burden of proving that the initial detention was sufficiently justified." Maj. Op. at 15. As the majority sees it, because Bak was "unable to testify as to the amount of time that passed between when the accident occurred, when the original officers arrived and detained McDavid, and when Bak arrived on the scene," "we are forced to only assume the presence of these circumstances at the time McDavid was detained," and that is "too speculative" a basis on which to affirm the trial court's denial of McDavid's motion to suppress. Maj. Op. at 13 n.4. The unstated assumption behind the majority's argument seems to be that McDavid may have gotten drunk *after* he drove his SUV off the road and onto the median and *after* Heart and Rupert arrived

6

and spoke with him as part of their accident investigation but *before* Bak arrived at the scene as part of the same accident investigation and began interacting with McDavid. However, no evidence was presented at the suppression hearing to support such an implausible chain of events. More importantly, the evidentiary record, construed "most favorably to the upholding of the trial court's findings and judgment," forecloses such a scenario. *Miller v. State*, 288 Ga. 286, 287(1) (702 SE2d 888) (2010) (citation modified).

Because the trial court properly denied McDavid's motion to suppress, I would affirm his convictions. Accordingly, I respectfully dissent.